**Stephen D. HOYNE, et al.,
Plaintiffs-Appellants,**

v.

**PRUDENTIAL SAVINGS AND LOAN
ASSOCIATION, et al.,
Defendants-Respondents.**

**No. 49078.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 6, 1986.

Motion for Rehearing and/or Transfer
Denied June 10, 1986.

Application to Transfer Denied
July 15, 1986.

Scott O. Marshall, St. Louis, for plaintiffs-appellants.

Albert E. Schoenbeck, Stephen M. Schoenbeck, Robert D. Tucker, St. Louis, for defendants-respondents.

SATZ, Judge.

Plaintiffs represent a class of persons who borrowed money from defendant, Prudential Savings and Loan Association.[1] Plaintiffs' loans were incorporated into promissory notes and were secured by deeds of trust on plaintiffs' homes. The notes and/or deeds of trust imposed a penalty if the loans were pre-paid prior to maturity. Each of the notes was pre-paid in full prior to maturity, and defendant charged and collected a prepayment penalty from each plaintiff. Plaintiffs, as a class, sued defendant, requesting a declara-

---

1. Prudential Savings & Loan Association merged with and became known as St. Louis Federal Savings & Loan after the suit was begun.

tory judgment that the prepayment penalty was prohibited by statute. The trial court denied the request and entered judgment for defendant. Plaintiffs appeal. We affirm.

The statute in issue is Sec. 408.036, RSMo Supp.1975 and RSMo Supp.1979. It provides:

"No prepayment penalty shall be charged or exacted by a lender on any promissory note ... secured by residential real estate when the full principal balance thereof is paid after five years from the origination date and prior to maturity; ...."

Plaintiffs contend the present facts are governed by this statute. Plaintiffs entered into their financing arrangements prior to 1975. Their debts were prepaid more than five years after the origination dates of the notes and after or on the effective date of the statute, January 9, 1975. Thus, plaintiffs contend Sec. 408.036 should apply retroactively to prohibit the exaction of the prepayment penalties in issue here. We disagree.

When plaintiffs entered into their financial arrangements with defendant, there was no prohibition against a prepayment penalty comparable to the prohibition of Sec. 408.036. Plaintiffs' notes and deeds of trust reflected this lack of restriction. Under the terms of these instruments, defendant promised to lend plaintiffs money, and plaintiffs promised to repay the amount borrowed according to fixed formulas. Plaintiffs promised either to repay the principal in fixed installments to maturity plus fixed interest or to repay the principal prior to maturity with a penalty for this prepayment fixed by another formula.[2] The purpose of the prepayment clause is self-evident. For the plaintiffs, it saves them interest and provides for the early release of their property from defendant's lien. For the defendant, it protects defendant's investment income.

It was immaterial to defendant which method plaintiffs chose to repay the money borrowed. Either method required plaintiffs to pay a premium for the use of defendant's money. Defendant thus protected its investment, assuring that a premium would be paid for its use. The consideration plaintiffs promised to pay defendant for the use of defendant's money was a premium, a premium to be paid as interest over the term, if the money were used to maturity, or as a penalty, if the money were repaid prior to maturity. In short, defendant had the right to receive a premium for the use of its money regardless of the method of payment, and plaintiffs had the correlative duty to pay the premium.

However, Sec. 408.036 prohibits the exaction of a prepayment penalty, and, thus, if the statute applies retroactively, plaintiffs could prepay the principal due without penalty. This would effectively destroy the consideration defendant bargained for, destroy defendant's right to a premium and, thus, destroy the contracts between plaintiffs and defendant.

■ Our state Constitution prohibits the enactment of any law "impairing the obligation of contracts." Mo.Const. 1945, Art. 1, Sec. 13. Certainly, the obligations of a contract are impaired by a law which extinguishes them. *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 431, 54 S.Ct. 231, 237, 78 L.Ed. 413, 425 (1934). *See also* 16A Am.Jur.2d, *Constitutional Law* Sec. 695, 702–04 (1979). Thus, to apply Sec. 408.036 as plaintiffs urge would be an unconstitutional application.

Statutes are presumed to operate prospectively only, unless legislative intent that they be given retroactive operation

2. This formula can be found in plaintiffs' notes which read:

The privilege is reserved of making additional payments on principal on any installment due date not to exceed a total of 15% of the original principal amount of the loan in any period of twelve consecutive months, without penalty, or payment of the entire loan at any time after one year from date, upon payment of a penalty of 2% of the original amount of the loan; provided, however, that written notice of an intention to exercise such privileges be given at least thirty (30) days prior to prepayment.

clearly appears from the express language of the act or by necessary or unavoidable implication. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982), *appeal dismissed*, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). Section 408.036 contains no express language indicating the restriction on prepayment penalties should apply retroactively. The reasonable construction of this statute, which makes it constitutional, is simply that it acts prospectively. We construe Sec. 408.036, as we are mandated to construe it, in a reasonable way to support its constitutionality. *E.g., St. Louis Board of Education v. Shannon*, 640 S.W.2d 121, 122 (Mo. banc 1982); *Diemer v. Weiss*, 122 S.W.2d 922, 923 (Mo. banc. 1938).

▮ Plaintiffs base their opposite conclusion that Sec. 408.036 is applicable here on several different grounds. First, plaintiffs contend the constitutional prohibition against laws impairing obligations of contract prohibits only those laws which destroy or diminish a vested right. Plaintiffs then argue that defendant had no right to a prepayment and its accompanying penalty. Rather, plaintiffs argue, they had a "privilege" or a "right" to prepay principal with a penalty, and defendant had the correlative duty to accept this method of payment. Stated otherwise, defendant had no right to enforce the prepayment and penalty but simply had the duty to accept it, if plaintiffs chose to exercise their "privilege" or "right." Since defendant had no right which was affected by Sec. 408.036, plaintiffs reason, this statute would not violate the constitutional prohibition against impairment of contract; thus, Sec. 408.036 should apply here.

We do not accept plaintiffs' narrowly focused analysis of the legal relations between plaintiffs and defendant.[3] But, even if plaintiffs' analysis is correct, they still would not prevail. Using plaintiffs' analysis, defendant only had the duty to accept a prepayment with penalty if plaintiffs chose to exercise their "privilege" or "right." If Sec. 408.036 applies, however, defendant's duty would be changed. Defendant would be required to accept a prepayment without a penalty—a radically different and more onerous duty than accepting prepayment with a penalty. The constitutional prohibition against impairment of obligations of contract has been interpreted not only as prohibiting the change in contractual rights but also as prohibiting the change in contractual duties. *See Hubbard v. Hubbard*, 264 S.W. 422, 424 (Mo.App.1924). *See also Northern Pacific Ry. v. Minn.*, 208 U.S. 583, 591, 28 S.Ct. 341, 343, 52 L.Ed. 630, 634 (1908); *South Terminal Corp. v. E.P.A.*, 504 F.2d 646, 680 (1st Cir.1974); *Superior Motors, Inc. v. Winnebago Industries, Inc.*, 359 F.Supp. 773, 779 (D.S.C. 1973).

▮ More important, perhaps, the constitutional clause relied on by defendant does not simply prohibit laws which impair obligations of contracts, it also prohibits laws which are "retrospective in [their] operation." Mo.Const. 1945, Art. 1, Sec. 13. These limiting phrases "impairing the obligation of contracts" and "retrospective in its operation" are not mutually exclusive. They are said to be "analogous" and certainly overlap. *See State ex rel. Jones v. Nolte*, 350 Mo. 271, 165 S.W.2d 632, 638 (banc 1942). In any event, the prohibition against "a law retrospective in its operation" prohibits laws which make a duty imposed by contract more onerous. As our courts have consistently held or stated, retrospective laws are those

"which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty or attach a new disability in respect to transactions or considerations already passed." *State ex rel. St. Louis S.F. Ry.*

---

3. Professor Hohfeld's construct of legal relations provides a consistent, simple and rigorous method for analyzing, in detail, the legal relations between plaintiffs and defendant. Corbin, *Legal Analysis and Terminology*, 29 Yale L.J. 163 (1919–20); Hohfeld, *Some Fundamental Legal*

*Conceptions As Applied In Judicial Reasoning*, 23 Yale L.J. 16 (1913). Hohfeldian analysis of legal relations created by contract has been diluted and may have been replaced by the amorphous and nebulous doctrines of "adhesion contracts" and "reasonable expectations."

*v. Buder,* 515 S.W.2d 409, 410 (Mo.banc 1974); *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958); *Lucas v. Murphy* [348 Mo. 1078] 156 S.W.2d 686, 690 (Mo. 1941).

■ Plaintiffs also argue that Art. 1, Sec. 13 protects only rights which are vested, and, plaintiffs contend, defendant merely had a contingent duty to accept prepayment of principal if certain conditions were met. Plaintiffs base this argument on the prepayment terms of the notes which provide:

> The privilege is reserved of making ... payment of the entire loan at any time after one (1) year ... upon payment of a penalty ... provided, however, that written notice of an intention to exercise such privileges be given at least (30) days prior to prepayment.

We agree these prepayment terms establish conditions to triggering certain legal relationships between the parties. But, as noted, we disagree with plaintiffs limiting defendant's legal relations with plaintiffs to a duty, contingent or otherwise. Defendant had the right to receive a premium for the use of its money, and this right was vested at the time the contracts between plaintiffs and defendant were completed.

> "[T]he fact that rights are future and conditional does not prevent their recognition and protection ... A contract creating such rights is legally effective according to its terms; if the payment of money is promised ..., the existence of a "contract right" is not denied merely because the money is payable in the future and only on the happening of an uncertain event or because some one has a power of termination or modification. If a right has to be "vested" in order to be recognized and protected, these rights are vested. It is immaterial whether the parties "expect" or "hope" that payment will take place. The holder of a fire insurance policy very seldom gets the money promised him, and yet he is not disappointed in his "expectations." He both hopes and expects that his house will not burn down; yet no one doubts

that he has "rights" created by the policy contract." A. Corbin, *Contracts* Sec. 626, at 582–83 (1952).

Plaintiffs also argue defendant would suffer little, if any, prejudice in being unable to collect the prepayment penalties on the loans here, all of which were made prior to January 1975. Interest rates were much lower prior to 1975, plaintiffs contend, and, plaintiffs reason, defendant would be able to lend the collected prepayments at higher rates of interest than originally charged.

■ The simple answer to this argument is the amount and extent of impairment here is immaterial. "[A] prepayment case does not fall into a simple calculation at any one point of time of the difference between the interest rate on the repaid loan and that which might be available to the lending institution on a new loan of about the same size made to a new borrower." *Lazzareschi Investment Co. v. San Francisco Federal Savings & Loan Ass'n.,* 22 Cal.App.3d 303, 310, 99 Cal.Rptr. 417, 421 (1971). The question is not whether the legislative alteration of the contract injures defendant seriously or only slightly. Defendant had the right to the contract he entered into. It is defendant's privilege to judge for itself whether the contract is to be discharged as agreed, and the legislature cannot change its substance.

Moreover, prepayment penalties are designed in part to compensate lenders for the time and expenses involved in making new long-term investments. *See, e.g., Berenato v. Bell Savings & Loan Ass'n.,* 276 Pa.Super. 599, 419 A.2d 620, 621 (1980). Defendant still has such expenses whether or not in the long run new loans may be more profitable.

Plaintiffs also argue the police power of our General Assembly can be used to override any prohibition of the retroactive application of Sec. 408.036. The statute was enacted during an emergency legislative session and was to take effect immediately. To plaintiffs this demonstrates a legislative intent to make Sec. 408.036 act retroactively.

Section 408.036 was enacted as part of a package designed to promote the residential construction industry. *See* Laws of Missouri 1974–75, at 968, 972. To accomplish this purpose, however, it is not necessary to give retrospective application to the limitation on prepayment penalties. The statute, once passed, took effect immediately by curtailing the unlimited use of prepayment penalties in all contracts executed after its effective date, January 9, 1975. This effect was sufficient to accomplish the purpose of promoting the construction industry in light of the other statutes enacted in the same package. *See* Laws of Missouri 1974–75, at 968–72. The police power of the General Assembly may not be employed to impair the obligations of contracts where the impairment is not necessary to achieve the objective for which the power is being exercised. *State ex rel. Kansas City v. Public Service Commission*, 524 S.W.2d 855, 864 (Mo. banc 1975).[4]

Plaintiffs next attack the trial court's judgment on procedural grounds. Plaintiffs argue there was insufficient evidence to support the trial court declaring this action to be a class action. More specifically, plaintiffs argue the trial court simply assumed all the notes and deeds of trust of the class members, executed prior to January 9, 1975, contained prepayment provisions. In addition, plaintiffs contend the trial court assumed there was a sale of the residential real estate securing each loan.

Plaintiffs' attack is peculiar, to say the least. The named plaintiffs specifically sought certification of the present cause as a class action. In so doing, they asserted their claims were typical of the claims of the class and there were "no substantial questions of law or fact which affect only individual members." There was no evidence to the contrary. Moreover, after sustaining the named plaintiffs' Motion for Determination of Class Action, the trial court directed a "Notice of Pendency of Class Action" to the class members. This notice included the same facts plaintiffs now question. Nothing of record indicated any member came forward with a differing fact pattern. The notice directed to the class members gave the court added assurance that its finding was correct. *See generally* Fisch, *Notice, Costs, and the Effect of Judgment in Missouri's New Common-Question Class Action*, 38 Mo.L.Rev. 173, 197 (1973). On the present record, the trial court was justified in concluding no class member had a differing claim. *See State ex inf. Ashcroft v. Kansas City Firefighters Local 42*, 672 S.W.2d 99, 120–21 (Mo. App.1984).[5]

Furthermore, the named plaintiffs themselves established the sale of the residential real estate securing each of their debts, the existence of prepayment provisions in the notes or deeds of trust of each plaintiff and the execution of each note or deed of trust prior to January 9, 1975. On this record, plaintiffs cannot sensibly complain their claims are not representative of the entire class. *See Senn v. Manchester Bank*, 583 S.W.2d 119, 132–33 (Mo. banc 1979).

Plaintiffs base their final argument on a due-on-sale clause contained in each deed of trust. This clause gave the defendant the option to make the note "due and payable" if a plaintiff conveyed the residence securing the note. Each plaintiff did in fact sell his residence. The balance due on each note plus a prepayment penalty was disbursed to defendant from the proceeds of the sale. Plaintiffs argue this was an exercise of the due-on-sale clause by defendant, which accelerated the due date of the debt and, thus, made the debt a mature debt at the time the balance due was paid. Since a

---

4. Plaintiffs also argue that Sec. 408.036 is only being applied to future payments, not past transactions and is therefore not retroactive in nature. The penalties were however specifically authorized by the terms of the notes signed before the enactment of Sec. 408.036. Application of Sec. 408.036 to cut off vested rights granted by a pre-existing contract would be retrospective.

5. Even on appeal, plaintiffs failed to point out any differences; they merely suggest this may be so.

matured debt was paid, plaintiffs reason, no prepayment prior to maturity occurred, and defendant was not entitled to collect a prepayment penalty.

This reasoning is not reflected in the pleadings. In plaintiffs' petition, no mention is made of a due-on-sale clause or defendant's acceleration of the note. Rather, in their petition, plaintiffs set out Sec. 408.036 explicitly and allege it—the statute itself, not the acceleration of a due-on-sale clause—prohibited the defendant from charging a prepayment penalty. Moreover, in their prayer for relief, plaintiffs requested the court "to declare ... [Sec. 408.036] ... prohibited Defendant from charging or exacting a prepayment penalty with respect to promissory notes ... repaid in full after five years from the origination date and *prior to maturity*." (Emphasis added) Furthermore, plaintiffs' reply to defendant's affirmative defense of Art. 1, Sec. 13 added nothing new. Plaintiffs simply replied: defendant had no contractual right to charge a prepayment penalty; defendant had only a contingent duty to accept prepayment and a penalty if plaintiffs chose to exercise their prepayment privileges or rights.

In addition, plaintiffs' reasoning is not reflected in its request for findings of fact and conclusions of law. This request is specific and detailed. It focuses solely on Sec. 408.036 and its effect on the notes and deeds in issue. (See Appendix). Plaintiffs also filed a proposed judgment which simply reflects the requested findings of fact and conclusions of law.

■ Plaintiffs' due-on-sale clause argument is totally foreign to their pleadings, their requested findings of fact and conclusions of law and their proposed judgment. Consequently, neither defendant nor the trial court would have been put on notice that plaintiffs were attacking the charge of a prepayment penalty based on the due-on-sale clause. This argument, based on the due-on-sale clause, raises issues totally different than those raised by plaintiffs' argument based upon defendant's right to a prepayment penalty under Sec. 408.036.

Admittedly, testimony was elicited describing the sale of each residence and the method of disbursing payment to defendant from the proceeds of the sale. But in light of the entire record, we cannot find the due-on-sale issue was tried by consent. *See Crews v. Tusher,* 651 S.W.2d 677, 679 (Mo.App.1983). Plaintiffs simply did not raise this issue at trial, and an issue not raised at trial may not be raised on appeal. *E.g., South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583, 590 (Mo.App.1975).

Judgment affirmed.

SIMON, P.J., and CRIST, J., concur.

### APPENDIX

#### PLAINTIFFS' REQUEST FOR CONCLUSION OF LAW

Pursuant to Civil Rule 73.01(b), Plaintiffs request that the Court prepare and file a brief opinion containing a statement of the grounds for its decision in this case, and render conclusions of law with respect to the following issues:

ISSUE NO. 1  Do Sec. 408.036 R.S.Mo. Supp.1975 and Supp.1979 prohibit the charge of a prepayment penalty on any promissory notes secured by residential real estate when the full principal balance thereof is paid after five years from the origination date, prior to maturity, and after January 9, 1975?

CONCLUSION OF LAW: Yes, the statute is clear and unambiguous on its face.

ISSUE NO. 2  Do Sec. 408.036 R.S.Mo. Supp.1975 and Supp.1979 make any distinction between promissory notes executed prior to January 9, 1975, the original effective date of the statute, and promissory notes executed after such effective date?

CONCLUSION OF LAW: No, the statute makes no such distinction but rather uses the very broad language "any promissory note".

ISSUE NO. 3  Do Sec. 408.036 R.S.Mo. Supp.1975 and Supp.1979 apply to promissory notes executed before January 9,

1975, the original effective date of the statute?

CONCLUSION OF LAW: Yes, the statute is clear, unambiguous and makes no distinction between promissory notes based upon their dates of execution. All acts of the General Assembly should be liberally construed so as to effectuate the true intent and meaning thereof. Sec. 1.010 R.S. Mo.1978. In addition, the General Assembly specifically indicated that an emergency existed with respect to the subject matter of this statute and directed that the same would become effective immediately upon signing by the Governor, all in accordance with the Missouri Constitution, 1945, Article III, Section 29. See Senate Journal, 77th General Assembly, Volume II, 1974–75, 2d Ex.Sess., p. 142. If Sec. 408.036 R.S.Mo.Supp.1975 had not been intended by the legislature to apply to promissory notes executed prior to its effective date, the statute could not have applied to any promissory note for at least five years after the effective date, thus rendering the designation of the statute as emergency legislation meaningless.

ISSUE NO. 4 Did Defendant violate Sec. 408.036 R.S.Mo.Supp.1979 by charging Plaintiffs Stephen D. Hoyne and Susan L. Hoyne a prepayment penalty on April 25, 1980?

CONCLUSION: Yes.

ISSUE NO. 5 Did Defendant violate Sec. 408.036 R.S.Mo.Supp. 1975 and Supp. 1979 by charging prepayment penalties to Plaintiffs and the persons described in Pages 1 through 30 of Defendant's answers to Plaintiffs' interrogatories Number 1 and 2?

CONCLUSION: Yes.

ISSUE NO. 6 Do Sec. 408.036 R.S.Mo. Supp.1975 and Supp.1979 as applied to the prepayment penalties charged by Defendant to Plaintiffs impair the obligation of contract or operate retrospectively in violation of the Missouri Constitution, 1945, Article I, Section 13, or the Constitution of the United States, Article I, Section 10?

CONCLUSION OF LAW: No, the statutes do not violate any constitutional rights of Defendant. Plaintiffs had no contractual obligation or duty to ever pay a prepayment penalty under the terms of the promissory notes they executed. Concomitantly, Defendant never had a contractual right to ever charge or receive a prepayment penalty from Plaintiffs under the promissory notes. Defendant was, however, under a contingent contractual duty to accept payment of the entire principal balance in full prior to maturity if Plaintiffs took certain actions, namely, gave Defendant not less than thirty days prior written notice of an intention to prepay the entire principal balance in full prior to maturity and then tendered payment of such principal balance together with an additional amount denominated as a prepayment penalty pursuant to such notice. Missouri cases are clear in holding that a law is not retrospective in operation nor does it impair the obligation of contracts unless it impairs some "vested right". *Fisher v. Reorganized School District No. R–V of Grundy County*, 567 S.W.2d 647 (Mo. banc. 1978); *State ex rel. Jones v. Nolte*, 165 S.W.2d 632 (Mo. banc. 1942). In *Fisher*, the Court said "vested right" must be title to present or future enjoyment of property; it is more than just an "expectation" based on a supposed continuation of past law. In the instant case, Defendant never had any vested right to charge or receive a prepayment penalty from Plaintiffs. Defendant's sole vested right under the promissory notes was to receive payments of principal and interest in installments over the term of the loans. Therefore, Defendant never had more than a mere contingent contractual duty to accept a tender of the principal balance in full prior to maturity if Plaintiffs had 1) indicated a desire to do so by not less than thirty days prior written notice, 2) thereafter tendered such principal balance and a prepayment penalty to Defendant, and 3) Missouri law had not changed. It is also well to observe that Sec. 408.036 R.S.Mo. Supp.1975 and Supp.1979 apply to condi-

tions of payment in the future and do not apply retrospectively to past transactions. Plaintiffs further submit that the enactment of Sec. 408.036 was within the police power of the General Assembly. Finally, the constitutional prohibition against laws which are retrospective in operation only applies when a statute affects past transactions to the substantial prejudice of parties interested; it does not mean that the legislation cannot pass a law which affects past transactions. *Willhite v. Rathburn,* 61 S.W.2d 708 (Mo.1933). Defendant has not demonstrated that it has been substantially prejudiced as to any past transactions.