WILLIAM L. BUSKIRK, Plaintiff-Appellant, *v.* BURLINGTON NORTHERN, INC., Defendant-Appellee.

Fifth District    No. 81-28

Opinion filed January 13, 1982.—Rehearing denied February 17, 1982.

James McGlynn and John D. Wendler, both of McGlynn & McGlynn, of Belleville, for appellant.

John Newell, Kenneth J. Wysoglad, Lewis M. Nixon, and Thomas J. Knapp, all of Chicago, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff William L. Buskirk appeals from a judgment against him entered in the circuit court of St. Clair County after a jury verdict in favor of defendant. Buskirk filed suit to recover damages for injuries sustained while he was employed as a railroad switchman. His two-count complaint alleged both a violation of the Safety Appliance Act (45 U.S.C. §2 (1970)) and a violation of the Federal Employer's Liability Act (45 U.S.C. §51 *et seq.* (1970)). On appeal, he does not question the judgment against him on

the FELA count. Instead, his principal argument is that defendant violated section 2 of the Safety Appliance Act as a matter of law. We agree, and therefore reverse the jury's verdict and remand this cause for a new trial on damages only.

The following facts are undisputed by the evidence. Buskirk worked as a railroad switchman in defendant's East St. Louis Yard. This area serves as a classification yard where railroad cars are separated from each other and "kicked" into switch tracks for eventual connection with outgoing trains. Plaintiff testified that, on the night of the occurrence, a block of cars in switch yard number 10 was ready to be transferred to an outgoing trainyard. He directed a small engine slowly onto the switch-track and hooked up to the head car. When the engine began to pull the block of cars out of the classification yard, plaintiff could see that a hopper car had failed to couple with the car in front of it. At some point, he noticed that the drawbars of the two cars had skewed in opposite directions. He went between the cars and straightened one bar, but was unable to straighten the drawbar attached to the hopper car. He fell and injured his back while struggling to force the jammed bar back into position.

■■ Based on these undisputed facts, we hold defendant liable under title 45, section 2, as a matter of law. Section 2 of the Act was specifically designed to protect parties who are injured while going between cars to effect a coupling which did not take place automatically. (*Southern Pacific Co. v. Mahl* (5th Cir. 1969), 406 F.2d 1201, 1203.) Federal courts had consistently held that the failure of cars to couple automatically because of a misaligned drawbar constitutes a violation of section 2. *Metcalfe v. Atchison, Topeka & Santa Fe Ry. Co.* (10th Cir. 1974), 491 F.2d 892, 896-97, and cases cited therein.

■■ There is no question that the drawbar in this case was misaligned to such an extent that it precluded coupling automatically by impact. A carman assigned to Buskirk's crew testified that the two of them were able to move the bar only after applying oil to it and prying it loose with a large piece of wood. Although the parties presented several theories about what could have caused the drawbar to become so misaligned, we need not resolve that issue. It is sufficient for the plaintiff to have shown that, after a failure of the cars to couple automatically, he went between them and was injured while trying to straighten the misaligned bar. The Act imposes absolute liability on the railroad, regardless of how the drawbar became misaligned. (See *Kansas City Southern Ry. Co. v. Cagle* (10th Cir. 1955), 229 F.2d 12, 14, *cert. denied* (1956), 351 U.S. 908, 100 L. Ed. 1443, 76 S. Ct. 697.) Consequently, we find defendant liable as a matter of law and remand to the circuit court for a determination on the issue of damages.

Having concluded that there will be a new trial, we must address another issue raised by the plaintiff. Buskirk charges that the trial court committed prejudicial error by refusing to give his tendered instruction No. 18, Illinois Pattern Jury Instruction, Civil, No. 34.01 (2d ed. 1971) (hereinafter IPI) on future damages. His instruction differed from the one actually given by the trial court in that it contained the following paragraph:

"If they are permanent in nature then in computing these damages you may consider how long the plaintiff is likely to live."

Instead the jury was told:

"If these damages are of a continuing nature, you may consider how long they will continue."

■■ IPI Civil No. 34.01 was drafted with alternate paragraphs to cover either temporary or permanent damages. Plaintiff argues correctly that if his damages are permanent, he is entitled to have the paragraph which he tendered read to the jury. We have reviewed the record and find that there was substantial evidence to support a conclusion that plaintiff's injuries are permanent. Thus, at the trial on the damage issue, if plaintiff introduces evidence that his injuries are permanent, the court should instruct the jury accordingly. *Morehead v. Peyton* (1979), 73 Ill. App. 3d 809, 811, 392 N.E.2d 433.

Finally, plaintiff challenges the trial court's refusal to give plaintiff's tendered instruction on assumption of the risk and its refusal to allow counsel to comment on defendant's purported admission. Our decision imposing liability on the railroad as a matter of law makes the resolution of these issues unnecessary. This cause is therefore remanded to the circuit court with directions to enter judgment for plaintiff on the issue of liability, and a new trial on the issue of damages is ordered, consistent with the views expressed in this opinion.

Reversed and remanded.

KARNS, P. J., and WELCH, J., concur.